UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

JASON BALKUM,

                                        Plaintiff,

                    -v.-                                              9:09-CV-0289
                                                                      (NPM/GHL)

DONALD SAWYER, et al.,

                                        Defendants.

_____

APPEARANCES:

        JASON BALKUM
        Plaintiff, *pro se*
        352 Hayward Avenue, Apt. 2
        Rochester, New York 14609

        HON. ANDREW M. CUOMO                          RICHARD LOMBARDO, ESQ.
        Attorney General for the State of New York
        Counsel for Defendants
        The Capitol
        Albany, New York 12224

        GEORGE H. LOWE, United States Magistrate Judge

                            <u>**REPORT-RECOMMENDATION**</u>

        This *pro se* prisoner civil rights action, filed pursuant to 42 U.S.C. § 1983, has been

referred to me for Report and Recommendation by the Honorable Neal P. McCurn, Senior

United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c) of the

Local Rules of Practice for this Court.  Plaintiff Jason Balkum alleges that Defendants

violated his right to due process, conspired to violate his right to due process, libeled him,

and falsely imprisoned him when they civilly committed him to the Central New York

Psychiatric Center ("CNYPC").  (Dkt. No. 1.)  Currently pending is Defendants' motion to

dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt. No. 27) and Plaintiff's

motion for appointment of counsel (Dkt. No. 34).  Plaintiff has not opposed the motion to

dismiss, despite having twice been granted an extension of the deadline by which to do so.

(Dkt. Nos. 31, 33.)  For the reasons that follow, I recommend that Defendants' motion to

dismiss be granted in part and denied in part and that Plaintiff's motion for appointment of

counsel be denied without prejudice.

## I.    BACKGROUND

The complaint alleges that in August 2006, Plaintiff was finishing a term of

imprisonment at Washington Correctional Facility.  (Dkt. No. 1 at 3.)  Two weeks before his

prison term ended, Plaintiff was transferred to Coxsackie Correctional Facility.  *Id*.  At

Coxsackie, Defendants Bezalel Wurzberger and Jose Gonzalez, psychiatrists with the New

York State Office of Mental Health, interviewed Plaintiff to determine whether he should be

involuntarily confined to CNYPC pursuant to New York State Mental Hygiene Law § 9.27.

(*Id*. at 4.)

On September 7, 2006, Defendants Gonzalez and Wurzberger completed Certificates

of Examination ("Certificates") in which they stated that Plaintiff was a danger to the

community.  (Dkt. No. 1 at 5-6.)  Plaintiff alleges that each of these Defendants stated that

this opinion was based on a letter from Defendant Joanne Winslow[1], the attorney who

prosecuted Plaintiff, stating that she was concerned for her own safety if Plaintiff was

released because he was "still writing obsessive letters about this case."  *Id.* at 6.  Plaintiff

---

[1]

Defendant Winslow has not been served in this action.  As discussed below in
Section III, I recommend that the Court dismiss the claims against her *sua sponte*.

alleges that "Defendants Gonzalez and Wurzberger were not in possession of, and in fact did not have any knowledge of any records from [P]laintiff's mental, medical, or psychiatric history indicating to them" that Plaintiff met the criteria for commitment under § 9.27.  (Dkt. No. 1 at 6.)

Defendants have submitted copies of the Certificates in support of their motion to dismiss.  (Defs.' Ex. A, submitted under seal.)  The Court may properly consider these documents at this stage in the litigation, although they are not a part of the complaint, because Plaintiff relied upon the Certificates prepared by Defendants Gonzalez and Wurzberger when he filed suit.  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002).  The Certificates show that Defendant Wurzberger relied on Plaintiff's commitment offense, his prior criminal record, his failure to express remorse or participate in the mandated sex offenders' program, his continued denial that he committed a crime, his scores on psychological tests, and the letter from Defendant Winslow when he recommended that Plaintiff be involuntarily confined.  (Defs.' Ex. A.)  Defendant Gonzalez relied on Plaintiff's criminal history, his scores on psychological tests, his continued denial that he committed a crime, his lack of remorse, his refusal to participate in the sex offenders' program, the letter from Defendant Winslow, and a disciplinary conviction that Plaintiff received while serving his term.  *Id*.

On the date his prison term expired,[2] Plaintiff was transferred to the CNYPC.  (Dkt.

---

[2]    The New York State Department of Corrections website shows that this was on September 14, 2006.  New York State Department of Correctional Services, Inmate Population Information Search, http://nysdocslookup.docs.state.ny.us (last visited June 20, 2010).

No. 1 at 4.)  Plaintiff alleges that "Defendants Gonzalez, Wurzberger, and Winslow

knowingly and willingly entered into a conspiracy to deprive" Plaintiff of his right to due

process "in order to cause [him] to be unlawfully confined, against [his] will, to CNYPC."

(Dkt. No. 1 at 4.)

    While he was confined at CNYPC, Plaintiff learned that other people confined at the

facility had received copies of their Certificates "without any difficulty from the Health

Information Management ["H.I.M."] department."  (Dkt. No. 1 at 8.)  Plaintiff made a

written request to the H.I.M. department for his Certificates.  *Id*.  The H.I.M. department

forwarded Plaintiff's requests to Plaintiff's primary therapist, Defendant Peter Hanmer.  *Id*.

at 9.  Plaintiff's request for his Certificates was "denied by the H.I.M. department without

explanation."  *Id*. at 8.  Plaintiff asked Defendant Nikhil Nihalani, a CNYPC psychiatrist,

why he had not received his Certificates.  Defendant Nihalani said he would look into it and

get back to Plaintiff.  *Id*.  Ultimately, Defendant Nihalani informed Plaintiff that he would

not be allowed to have access to the Certificates.  *Id.* at 9.  Thereafter, Plaintiff asked

Defendant Hanmer why he was being denied access to his Certificates.  Defendant Hanmer

told Plaintiff that it was because the Certificates "contained information that could be

harmful to others" if Plaintiff knew it.  *Id*.  Plaintiff then wrote to Defendant Donald Sawyer,

the Executive Director of CNYPC, requesting copies of the Certificates.  *Id*.  Defendant

Sawyer denied the request.  *Id*. at 10.

    Plaintiff was released from CNYPC in October 2007 "after a legitimate review of

[his] mental health, medical and psychiatric records by a qualified forensic sex offender

expert in Albany."  (Dkt. No. 1 at 10.)

In November 2008, Plaintiff saw the Certificates for the first time when he received them in response to a discovery request in a different civil rights action.  (Dkt. No. 1 at 10.) Plaintiff alleges that "other than information about the criminal allegations against [P]laintiff, the only other statements in the two [Certificates] . . . were in reference to the slanderous and libelous statements that Defendant Winslow made."  *Id*. at 11.  Plaintiff alleges that the certificates "did not contain any information that [P]laintiff could use to cause harm to ... anyone else."  *Id*. at 10.

Plaintiff alleges that Defendants Sawyer, Hanmer, and Nihalani "knowingly and willingly entered into a conspiracy to conceal from [P]laintiff that [he] had been wrongfully and illegally involuntarily confined against [his] will, and in order to keep [him] wrongfully and illegally involuntarily confined against [his] will at CNYPC."  (Dkt. No. 1 at 11.)

Plaintiff brings this action against Defendants in their official and individual capacities.  (Dkt. No. 1 at 2-3.)  He alleges that Defendants violated his right to due process, conspired to violate his right to due process, and committed the state torts of libel and unlawful imprisonment.  *Id*. at 1.  He requests $50,000 in compensatory damages and $250,000 in punitive damages from each Defendant.  *Id*. at 11.

## II.    MOTION TO DISMISS

### A.    Legal Standard Governing Motions to Dismiss

A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) on the ground that the complaint fails to state a claim upon which relief can be granted.  In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is

entitled to relief." Fed. R. Civ. P. 8(a)(2). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is *plausible* on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis added). "Determining whether a complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial experience and common sense . . . [W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief." *Id.* at 1950 (internal citation and punctuation omitted).

"In reviewing a complaint for dismissal under [Rule] 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). Courts are "obligated to construe a *pro se* complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S. Ct. at 1949.

Where a *pro se* complaint fails to state a cause of action, the court *generally* "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citation omitted). Of course, an opportunity to amend is not required where the plaintiff has already amended the complaint.

6

*See Advanced Marine Tech. v. Burnham Sec., Inc.*, 16 F. Supp. 2d 375, 384 (S.D.N.Y. 1998) (denying leave to amend where plaintiff had already amended complaint once). In addition, an opportunity to amend is not required where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco*, 222 F.3d at 112 (citation omitted).

### B.      Claims Against Defendants in Their Official Capacities

Plaintiff brings this action against Defendants in both their individual and official capacities. (Dkt. No. 1at at 2-3.) Defendants argue that they are immune from suits for damages against them in their official capacities. (Dkt. No. 27-1 at 22-24.) Defendants are correct.

The Eleventh Amendment has long been construed as barring a citizen from bringing a suit against his or her own state in federal court, under the fundamental principle of "sovereign immunity." *See* U.S. Const. amend XI ("The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."); *Hans v. Louisiana*, 134 U.S. 1, 10-21 (1890); *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267 (1997); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). State immunity extends not only to the states, but to state agencies and to state officers who act on behalf of the state. *See Puerto Rico Aqueduct & Sewer Auth. v. Metcalf*, 506 U.S. 139, 142-47 (1993); *Pennhurst State Sch. & Hosp*, 465 U.S. at 101-06. Thus, the Eleventh Amendment bars suits for damages against state officials acting in their official capacities. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); *Ying Jing*

7

*Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir. 1993); *Farid v. Smith*, 850 F.2d 917, 921 (2d Cir. 1988).

Defendants here are employees of CNYPC and the Office of Mental Health.  Each of these organizations is an arm of the state and thus the employees of these organizations are entitled to Eleventh Amendment immunity from suit for damages against them in their official capacities.  *See Lane v. Carpinello*, No. 9:07-CV-0751 (GLS/DEP), 2009 U.S. Dist. LEXIS 88345, 2009 WL 3074344 (N.D.N.Y. Sept. 24, 2009).[3]  Plaintiff here seeks only damages.  (Dkt. No. 1 at 11-12.)  Therefore, I recommend that the Court grant Defendants' motion to dismiss the claims against them in their official capacities.

### C.   Federal Claims Against Defendants Gonzalez and Wurzberger

#### 1.   The complaint is not barred by *Heck v. Humphrey*

Defendants argue that Plaintiff's claims against Defendants Gonzalez and Wurzberger are barred by the rule in *Heck v. Humphrey*, 512 U.S. 477 (1994).  (Dkt. No. 27-1 at 9.)  I find that Defendants' argument is without merit.

In *Heck*, the Supreme Court held that:

> in order to recover damages for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

*Heck*, 512 U.S. at 486-87.

---

[3]     Defendants served a copy of this unpublished decision on Plaintiff with their moving papers.  (Dkt. No. 27-4.)

*Heck* does not bar Plaintiff's action for three reasons.  First, it is not clear whether, in the Second Circuit, the *Heck* bar applies in the involuntary commitment context.  Although Defendants cite *Huftile v. Miccio-Fonseca*, 410 F.3d 1136, 1140 (9th Cir. 2005) for the proposition that the *Heck* rule "has been held to apply to an individual's civil commitment," Defendants have not cited, and I have not been able to find, any decision from the Second Circuit adopting that position.[4]  (Dkt. No. 27-1 at 9.)

Second, even if *Heck* does apply in the involuntary commitment context in the Second Circuit, *Heck* does not bar this particular case because Plaintiff was no longer confined at CNYPC when he filed this action.  If a prisoner has been released from the confinement that he challenges, "a concrete and continuing injury that is a collateral consequence of the detention and can be remedied by granting the [habeas] writ must exist" in order for the *Heck* rule to apply.  *So v. Reno*, 251 F. Supp. 2d 1112, 1121 (E.D.N.Y. 2003) (internal quotation marks omitted) (citing, *inter alia*, *Spencer v. Kemma*, 523 U.S. 1, 7 (1998)).  The face of the complaint does not show that any such concrete and continuing injuries are present here.  *See Huang v. Johnson*, 251 F.3d 65, 74-76 (2d Cir. 2001) (*Heck*

---

[4]        This issue has been raised but not resolved before the Second Circuit.  In *Vallen v. Connelly*, 36 Fed. App'x 29, 30 (2d Cir. 2002), an unpublished case, a plaintiff sued social workers under § 1983, alleging that they made false statements that resulted in his involuntary commitment.  The district court dismissed the case *sua sponte* pursuant to 28 U.S.C. § 1915(e) as barred by *Heck*.  *Id*.  The Second Circuit vacated the judgment and remanded for further proceedings, noting that *Heck* was "not necessarily applicable" in the civil commitment context.  *Id*. at 31.  On remand, the district court granted the defendants' motion for summary judgment on the merits without addressing *Heck*.  *Vallen v. Connelly*, No.99 CIV. 9947, 2004 U.S. Dist. LEXIS 4490, 2004 WL 555698 (S.D.N.Y. Mar. 19, 2004).  The Second Circuit affirmed without discussing *Heck*.  *Vallen v. Connelly*, 185 Fed. App'x 22 (2d Cir. 2006).  After *Vallen*, the Second Circuit issued a published opinion allowing a plaintiff's § 1983 claim that he was wrongfully involuntarily committed to proceed to trial.  In doing so, the Second Circuit did not discuss *Heck*.  *Bolmer v. Oliveira*, 594 F.3d 134 (2d Cir. 2010).

rule did not bar action challenging duration of confinement brought after juvenile was
released from juvenile system).

Third, even if *Heck* applies in the involuntary commitment context where a plaintiff
has been released from the confinement of which he complains, the face of the complaint
plausibly suggests that Plaintiff has satisfied the *Heck* rule.  Plaintiff alleges that he was
released from CNYPC "after a legitimate review of [his] mental health, medical and
psychiatric records by a qualified forensic sex offender expert in Albany."  (Dkt. No. 1 at
10.)  Given the liberal construction afforded to *pro se* civil rights complaints, Plaintiff's
allegation that someone "in Albany" (i.e., the seat of New York state government)
invalidated Plaintiff's commitment to CNYPC is sufficient to plausibly suggest that
Plaintiff's commitment has been "declared invalid by a state tribunal authorized to make
such determination."  *Heck*, 512 U.S. at 486-87.  Therefore, I recommend that the Court
reject Defendants' argument that Plaintiff's claims against Defendants Gonzalez and
Wurzberger are barred by *Heck*.

## 2.    The complaint does not involve a pure question of state law

Defendants argue that "Plaintiff's claim that the certifications . . . prepared by
[D]efendants Gonzalez and Wurzberger [] fail to comply with MHL § 9.27 merely raises a
question of state law which cannot be litigated in a § 1983 action."  (Dkt. No. 27-1 at 11.)
Defendants correctly note that "[a]lleged violations of state law do not give rise to liability
under § 1983."  (Dkt. No. 27-1 at 10, citing *Doe v. Connecticut Dept. of Youth Servs.*, 911
F.2d 868, 869 (2d Cir. 1990).)  However, Plaintiff's claim that he was wrongfully committed
is not merely a state law claim.  As discussed below, Plaintiff's claim has federal due

10

process implications.  Therefore, I recommend that the Court reject Defendants' argument that Plaintiff's claims against Defendants Gonzalez and Wurzberger involve only matters of state law that do not give rise to liability under § 1983.

3.   The complaint states a due process claim

Plaintiff asserts that Defendants violated his right to due process.  (Dkt. No. 1 at 1.) In order to state a claim for violation of his procedural due process rights, a plaintiff must allege facts plausibly suggesting that he was deprived of a liberty interest without due process of law.  *Tellier v. Fields*, 280 F.3d 69, 79-80 (2d Cir. 2000).  Here, Defendants do not dispute that Plaintiff was deprived of a liberty interest.  The issue, then, is whether Plaintiff has alleged facts plausibly suggesting that he did not receive due process of law before he was committed to CNYPC.

Read broadly, Plaintiff's complaint asserts two theories: (1) that Defendants Gonzalez and Wurzberger violated his right to due process by insufficiently complying with Mental Hygiene Law § 9.27; and (2) that the Mental Hygiene Law, even if complied with perfectly, provides insufficient due process in these circumstances.  Defendants have addressed only the first theory.  I will briefly summarize the law applicable to involuntary civil confinements of prisoners nearing the end of their prison terms and then address each of these theories in turn.

a.   *Summary of Relevant Law*

Thirty years ago, the United States Supreme Court addressed the due process rights of prisoners who are involuntarily transferred to mental hospitals.  *Vitek v. Jones*, 445 U.S. 480 (1980).  In *Vitek*, a prisoner challenged a Nebraska statute under which inmates could be

transferred from prison to a mental institution upon the certification of one physician that the inmate suffered from a mental disease or defect that could not be properly treated in prison. *Id.* at 484, 487.  The Supreme Court considered "whether the Due Process Clause of the Fourteenth Amendment entitles a prisoner . . . to certain procedural protections, including notice, an adversary hearing, and provision of counsel, before he is transferred to a state mental hospital for treatment of a mental disease or defect."  *Id*. at 482-83.  The state argued that inmates' due process rights were "completely satisfied once a physician or psychologist . . . made the findings required by" the statute.  *Id.* at 490.  The Court rejected that argument, stating that because the minimum requirements of due process are "a matter of federal law, they are not diminished by the fact that the State may have specified its own procedures that it may deem adequate."  *Id*. at 491.  The minimum requirements of due process before a prisoner may be transferred to a mental hospital, the Court held, are: (1) written notice to the prisoner that a transfer to a mental hospital is being considered; (2) a hearing, after sufficient notice, at which disclosure is made to the prisoner of the evidence being relied upon for the transfer and at which an opportunity to be heard in person and to present documentary evidence is given; (3) an opportunity to present witnesses and to confront and cross-examine witnesses called by the state, except upon a non-arbitrary finding of good cause for not permitting presentation, confrontation, or cross-examination; (4) an independent decision maker; (5) a written statement by the finder of fact of the evidence relied upon and the reasons for transferring the inmate; (6) the availability of someone to assist the inmate

prepare for and conduct the hearing[5]; and (7) effective and timely notice of these rights.  *Id.* at 494-96.

New York has, as is relevant here, two statutory schemes regarding involuntary commitment.  The first, Correction Law § 402, sets forth the procedure for involuntarily civilly committing "any person undergoing a sentence of imprisonment or adjudicated to be a youthful offender or juvenile delinquent."  Correct. Law § 402(1).  It requires examination by two court-appointed physicians, court approval of the commitment order after notice to the inmate, and a pre-commitment hearing at the inmate's request before a prisoner can be civilly committed.  *Id.*

The second statute, Mental Hygiene Law Article 9, is a generally-applicable civil commitment statute.  Mental Hygiene Law § 9.27, the provision at issue in this case, provides for the involuntary commitment of "any person alleged to be mentally ill and in need of involuntary care and treatment."  An application for such an involuntary commitment must be made by an individual with personal knowledge.  Mental Hyg. Law § 9.27(b).  The application must be accompanied by "the certificates of two examining physicians."  *Id.* at (a).  A doctor at the receiving institution must examine the patient and confirm the findings of the certifying physicians.  *Id.* at (e).  Under this statutory scheme, the patient is not entitled to a hearing until after he or she has been involuntarily committed. Mental Hyg. Law § 9.31.

Mental Hygiene Law Article 9 "has been held facially sufficient to meet the

---

[5]

Four Justices would have required appointed counsel for prisoners facing transfer to a mental hospital.  *Vitek*, 445 U.S. at 496-97.

requirements of due process." *Rodriguez v. City of New York*, 72 F.3d 1051, 1062 (2d Cir.

1995 ) (citing *Project Release v. Provost*, 722 F.2d 960, 972-74 (2d Cir. 1983)).  *Project

Release*  did not involve any claims by prisoners.  *Rodriguez*, 72 F.3d at 1061.  Nor did it

purport to hold that the statute could survive any particular as-applied challenge.  *Id.*

      "[B]etween 1998 and 2005, former New York State Governor George Pataki made

several attempts to get the New York State Legislature to enact legislation providing for the

civil commitment following completion of their criminal sentences of certain inmates who

had been convicted of qualifying sexual offenses." *Bailey v. Pataki,* ___ F. Supp. 2d ____,

No. 08 Civ. 8563, 2010 U.S. Dist. LEXIS 66720, 2010 WL 2671462, at *1 (S.D.N.Y. July 6,

2010).  The New York State Assembly would not bring the proposed legislation to a vote.

*Id*.  Despite the lack of legislative action, in the fall of 2005, the Office of Mental Health

began to evaluate certain felony sex offenders who were nearing the end of their prison

sentences to assess whether they should be committed to psychiatric hospitals upon their

release from prison.  *State ex. rel. Harkavy v. Consilvio* (*Harkavy II*), 870 N.E.2d 128, 129

(N.Y. 2007).  These evaluations were performed pursuant to the provisions of Mental

Hygiene Law § 9.27 rather than pursuant to Correction Law § 402.  *Id*.  Many of the

individuals evaluated in this manner were ultimately committed to CNYPC or similar

facilities.  *Id*.

      The Mental Hygiene Legal Service filed a petition on behalf of a group of such

individuals in New York state court, arguing that the individuals were entitled to the

protections of Correction Law § 402.  The trial court ruled in the petitioners' favor, but on

March 30, 2006, the Appellate Division, First Department, reversed.  *State ex. re. Harkavy*

*v. Consilvio* (*Harkavy*), 812 N.Y.S.2d 496 (N.Y. 1ˢᵗ App. Div. 2006).  The Appellate

Division concluded that proceeding under the Mental Hygiene Law rather than the

Correction Law was proper, both statutorily and constitutionally.  *Id*. at 500-01.  Statutorily,

the Appellate Division found that because "commitment" does not occur until the

certification by the doctor at the receiving institution, the petitioners were "free citizen[s] no

longer undergoing a sentence of imprisonment" at the time of commitment.  *Id*.  Thus, the

court concluded, they were not entitled to the heightened protections of the Correction Law.

*Id*.  Constitutionally, the Appellate Division distinguished *Vitek* because the petitioners

"were no longer prisoners at the time of their commitment."  *Id*. at 501.

On November 21, 2006, the New York Court of Appeals reversed the Appellate

Division's decision.  *New York ex rel. Harkavy v. Consilvio* (*Harkavy I*), 7 N.Y.3d 607

(2006).  The Court of Appeals concluded, as a matter of statutory interpretation, that "in the

absence of a clear legislative directive in regard to inmates nearing their release from

incarceration," prison officials were required to follow the procedures mandated by

Correction Law § 402 rather than the procedures mandated by the Mental Hygiene Law

when committing prisoners whose terms had not yet expired.  *Id.* at 614.  Although the

parties raised it (*Harkavy I*, 7 N.Y. 3d at 609), the Court of Appeals did not address the

federal due process issue.[6]

---

[6]        After *Harkavy I*, New York enacted Article 10 of the Mental Hygiene Law, which
provides procedures for the transfer of certain offenders to psychiatric hospitals
upon their release from prison.  The New York Court of Appeals has ruled that the
new law "fill[s] the statutory void" it noted in *Harkavy I* and has directed that the
*Harkavy II* petitioners be re-examined using the new procedure.  *Harkavy II*, 870
N.E.2d at 131-32.  On April 12, 2007, the Mental Hygiene Legal Service filed a
declaratory action in the Southern District of New York attacking the

Upon this background, I turn to Plaintiff's claims and the pending motion.

>   b.   *The certificates show that Defendants Gonzalez and Wurzberger*
>         *complied with Mental Hygiene Law § 9.27*

Defendants argue that Plaintiff has not stated a due process claim against Defendants

Gonzalez and Wurzberger because he received all of the process he was due.  (Dkt. No. 27-1

at 11.)  Defendants' argument states, in full: "[D]ue process does not require a guarantee that

a physician's assessment in his commitment evaluation be correct . . . Accordingly,

[P]laintiff's claim that he did not qualify for commitment under MHL § 9.27 does not raise

an actionable due process claim."  (Dkt. No. 27-1 at 11, citation omitted).  Defendants thus

construe Plaintiff's complaint fairly narrowly, as a claim that Defendants Gonzalez and

Wurzberger violated his due process rights by assessing him incorrectly.  Defendants cite

*Rodriguez v. City of New York*, 72 F.3d 1051 (2d Cir. 1995).

*Rodriguez* involved a non-prisoner patient who was involuntarily committed

pursuant to New York Mental Hygiene Law § 9.39[7] after two physicians found that she was

suffering from a mental illness likely to result in harm to herself or others.  *Rodriguez*, 72

F.3d at 1053.  She brought a § 1983 action, claiming that the doctors violated her rights to

substantive and procedural due process.  *Id*. at 1054.  The district court granted the

----

constitutionality of some provisions of Article 10.  *Mental Hygiene Legal Serv. v.
Spitzer*, No. 07 Civ. 2935.  The district court granted the plaintiffs' motion for
preliminary injunction regarding two of the challenged provisions.  The Second
Circuit affirmed.  *Mental Hygiene Legal Serv. v. Paterson*, No. 07-5548-CV, 2009
U.S. App.  LEXIS 4942, 2009 WL 579445 (2d Cir. Mar. 4, 2009).  Cross-motions
for summary judgment are currently pending in the Southern District.

[7]   § 9.39 is the section of Article 9 applicable to emergency involuntary
commitments.

defendants' motion for summary judgment.  *Id*. at 1059-60.  The Second Circuit vacated the

judgment and remanded for further proceedings.  *Id*. at 1066.  In the section of the opinion

cited by Defendants (Dkt. No. 27-1 at 11), the court stated:

> [W]e agree with the district court that due process does not
> require a guarantee that a physician's assessment of the
> likelihood of serious harm be correct . . . [but] due process does
> demand that the decision to order an involuntary emergency
> commitment must be made in accordance with a standard that
> promises some reasonable degree of accuracy.

*Rodriguez*, 72 F.3d at 1062.[8]

    The *Rodriguez* court described what "a standard that promises some reasonable

degree of accuracy" entails.  Due process, the court stated, requires "no less" than that

physicians' judgments about whether an individual should be deprived of liberty "be

exercised on the basis of substantive and procedural criteria that are not substantially below

the standards generally accepted in the medical community."  *Rodriguez*, 72 F.3d at 1063.

Merely making the finding required by the Mental Hygiene Law is not sufficient to satisfy

due process: rather, the finding must be made according to generally accepted medical

standards.  *Id*.  The question of "what the generally accepted standards [a]re is a question of

fact."  *Id*.

    Thus, this question should be raised at the summary judgment stage, as the

defendants did in *Rodriguez* (where their motion was supported by deposition testimony

from the physicians, hospital records of the physicians' contemporaneous notes, and expert

---

    [8]    I note that Defendants omitted the qualifying phrase that "due process does
demand that the decision . . . must be made in accordance with a standard that promises some
reasonable degree of accuracy" from their argument.

testimony), or at trial. *Rodriguez*, 72 F.3d at 1054-60.  If, at the summary judgment stage, there is conflicting expert testimony "on the question of what [a]re the generally accepted standards in the medical community," the case should proceed to trial. *Id.* at 1064.  If, however, the undisputed facts support only the conclusion that the defendants made their findings based on generally accepted medical standards, the court may enter summary judgment for the defendants. *See Glass v. Mayas*, 794 F. Supp. 470 (E.D.N.Y. 1992) (granting defendant doctors' motion for summary judgment where undisputed facts showed that they acted reasonably when they recommended that patient be involuntarily committed); *Richardson v. Nassau County Med. Ctr.*, 840 F. Supp. 219 (E.D.N.Y. 1994) (same).

Here, Plaintiff alleges, essentially, that the Certifications by Defendants were unreasonable because they relied 'solely' on his criminal history and the letter from Defendant Winslow.  (Dkt. No. 1 at 11 ¶ 26.)  However, the Certificates themselves show that Defendants Gonzalez and Wurzberger relied on more than those two factors.  (Defs.' Ex. A.)  In addition to Plaintiff's criminal history and the letter from Defendant Winslow, Defendants Gonzalez and Wurzberger relied on psychological testing scores, Plaintiff's failure to participate in mandated programming, his lack of remorse, his prison disciplinary history, and his denial that he had committed a crime. *Id.*  Considering the disparity between Plaintiff's version of the Certificates and what the Certificates themselves show, I find that Plaintiff has not plausibly alleged that Defendants Gonzalez and Wurzberger deprived him of due process by inadequately complying with the standards of Mental Hygiene Law § 9.27.  Therefore, I recommend that Defendants' motion to dismiss this claim be granted.

       c.      *Applying the  Mental Hygiene Law to Plaintiff rather than Correction Law § 402 deprived him of due process*

Because Plaintiff is proceeding *pro se*, the Court is required to "construe the complaint broadly, and interpret it to raise the strongest arguments that it suggests." *Weixel v. Bd. of Educ. of City of New York*, 287 F.3d 138, 145-46 (2d Cir. 2002) (citation and punctuation omitted).  I therefore construe the complaint more broadly than Defendants do and view it as claiming that Plaintiff's due process rights were violated not merely by an erroneous application of the procedures in Mental Hygiene Law § 9.27, but by the use of those procedures rather than the more protective procedures in Correction Law § 402.

District courts in the Second Circuit considering this issue have uniformly held that prisoners who were transferred to CNYPC or similar institutions pursuant to Mental Hygiene Law § 9.27 were deprived of due process, or at least that a complaint raising this allegation is sufficiently strong to survive a motion to dismiss.  *Bailey,* 2010 WL 2671462, at *8 (stating that "the procedures used for plaintiffs' involuntary commitment rather blatantly violated plaintiffs' constitutional rights" and denying defendants' motion for summary judgment); *Bailey v. Pataki*, 636 F. Supp. 2d 288 (S.D.N.Y. 2009) (denying motion to dismiss); *Bloomfield v. Wurzberger*, No. 9:08-CV-619 GLS/RFT, 2009 U.S. Dist. LEXIS 95924, 2009 WL 3335892 (N.D.N.Y. Oct. 15, 2009) (denying motion to dismiss brought by, *inter alia*, Defendants Wurzberger, Gonzalez, Nihalani, and Sawyer); *Lane*, 2009 WL 3074344 (finding that prisoner was deprived of due process but granting summary judgment to defendants on qualified immunity grounds); *Wheeler v. Pataki*, No. 9:07-CV-0892 TJM/GHL, 2009 U.S. Dist. LEXIS 19343, 2009 WL 674152 (N.D.N.Y. Mar. 11,

2009) (denying motion to dismiss); *Abdul-Matiyn v. Pataki*, No. 9:06-CV-1503 DNH/DRH, 2008 U.S. Dist. LEXIS 28670, 2008 WL 974409 (N.D.N.Y. Apr. 8, 2008) (denying motion to dismiss).[9]  Given the Supreme Court's decision in *Vitek* and the New York Court of Appeals' decision in *Harkavy I*, I concur with these courts.  Therefore, I recommend that the Court reject Defendants' argument that, as a matter of law, they afforded Plaintiff all of the process to which he was due.

> c.      *Defendants Gonzalez and Wurzberger are not entitled to qualified immunity at this stage in the litigation*

Defendants argue that Defendants Gonzalez and Wurzberger are entitled to qualified immunity.  (Dkt. No. 27-1 at 13-17.)  Specifically, noting that the New York Court of Appeals had not yet decided *Harkavy I* at the time Plaintiff was committed, they argue that Defendants Gonzalez and Wurzberger are entitled to qualified immunity because "in preparing a certification . . . that [P]laintiff was in need of involuntary care and treatment, [they] were relying on a presumptively valid state statute."  (Dkt. No. 27-1 at 15.) Defendants note, in particular, that the Appellate Division's decision in the *Harkavy* litigation, later reversed by *Harkavy I*, was good law at the time Plaintiff was involuntarily committed.  *Id.* at 15-17.  That decision, as discussed above, held that commitment pursuant to the Mental Hygiene Law in circumstances similar to Plaintiff's violated neither New York's statutory scheme nor due process.

---

[9]

The Court will provide Plaintiff with copies of these unpublished decisions in accordance with the Second Circuit's decision in *LeBron v. Sanders*, 557 F.3d 76 (2d Cir. 2009).  As noted above, Defendants served a copy of *Lane* on Plaintiff with their moving papers.

"[U]sually, the defense of qualified immunity cannot support the grant of a [Rule] 12(b)(6) motion for failure to state a claim upon which relief can be granted."  *McKenna v. Wright*, 386 F.3d 432, 435 (2d Cir. 2004) (citation omitted).  However, the qualified immunity defense may "be asserted on a Rule 12(b)(6) motion as long as the defense is based on facts appearing on the face of the complaint."  *McKenna*, 386 F.2d at 435.

The qualified immunity inquiry generally involves two issues: (1) "whether the facts, viewed in the light most favorable to the plaintiff, establish a constitutional violation"; and (2) "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted." *Sira v. Morton*, 380 F.3d 57,  68-69 (2d Cir. 2004) (citations omitted); *accord*, *Higazy v. Templeton*, 505 F.3d 161, 169 n.8 (2d Cir. 2007) (citations omitted). Courts may exercise their sound discretion in deciding which of the two prongs should be addressed first, in light of the circumstances in the particular case at hand. *Pearson v. Callahan*, 129 S. Ct. 808, 817 (2009).

Here, as discussed above, the facts, viewed in the light most favorable to the plaintiff, establish a constitutional violation.  I will therefore consider the second factor - whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted.

In determining  whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted, courts in this Circuit consider three factors:

> (1) whether the right in question was defined with 'reasonable specificity';
> (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and

> (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

*Jermosen v. Smith*, 945 F.2d 547, 550 (2d Cir. 1991) (citations omitted), *cert. denied*, 503 U.S. 962 (1992).

Applying the first two factors here, I find that the right in question here was defined with reasonable specificity and was supported by the decisional law of the Supreme Court.  More than twenty-five years before the incident at question here, the United States Supreme Court held in *Vitek* that prisoners are entitled to substantial procedural protections before being transferred from a standard prison facility to a psychiatric facility.  *Vitek*, 445 U.S. at 480.  The full range of protections described in *Vitek* were not made available to Plaintiff, or indeed to any prisoner facing commitment under the auspices of the Mental Hygiene Law.

The third factor is the difficult one in this case.  "As the third part of the test provides, even where the law is 'clearly established' and the scope of an official's permissible conduct is 'clearly defined,' the qualified immunity defense also protects an official if it was 'objectively reasonable' for him at the time of the challenged action to believe his acts were lawful." *Higazy*, 505 F.3d at 169-70 (citations omitted).  This "objective reasonableness" part of the test is met if "officers of reasonable competence could disagree on [the legality of defendant's actions]." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

District courts in the Second Circuit are split as to whether defendants in cases such as this acted objectively reasonably by following Mental Hygiene Law Article 9 rather than Correction Law § 402.  In *Lane*, relied upon by Defendants, the court stated that:

> Although I have determined that plaintiff's right to due process

22

was violated when he was involuntarily committed to CNYPC, I also find that the inability of state officials, including defendants and any DOCS official that may have been involved, to rely on MHL § 9.27 was not clearly established at that time. At the time of plaintiff's commitment the Court of Appeals had not yet decided *Harkavy*. Indeed, before plaintiff's commitment, the New York State Supreme Court Appellate Division, First Department, in that case had endorsed the DOCS' ability to utilize MHL § 9.27, finding that provision to be consonant with the petitioners' Fourteenth Amendment rights to due process. *Harkavy v. Consilvio,* 29 A.D.3d 221, 812 N.Y.S.2d 496 (1st Dep't 2006). In addition to the unsettled state of the law in New York, it appears that no federal court decision had been issued forecasting the ultimate finding in *Harkavy* before plaintiff's confinement to CNYPC. In fact, prior to *Harkavy,* the Second Circuit had generally approved of MHL § 9 .27 as meeting both substantive and procedural due process requirements. *See, e.g., Project Release v. Provost,* 722 F.2d 950, 972-975 (2d Cir.1983). Accordingly, I conclude that the parameters of plaintiff's constitutional right to due process were not clearly established at the time of his commitment and that, as a matter of law, it was objectively reasonable for defendants, as well as the DOCS, to rely on MHL § 9.27 in committing plaintiff to CNYPC. I therefore recommend a finding that, to the extent that any of the defendants were involved in the decision to commit plaintiff to CNYPC on his parole release date, they are entitled to qualified immunity with respect to plaintiff's claims for violation of his Fourteenth Amendment rights to due process, in light of the fact that it was objectively reasonable for them to believe that they were acting in a manner that did not violate any of plaintiff's protected rights.

*Lane*, 2009 WL 3074344, at *11.[10]

In contrast to the *Lane* decision, the district courts in *Bailey*, 636 F. Supp. 2d 288, and *Bloomfield*, 2009 WL 3335892, rejected the defendants' qualified immunity arguments at the motion to dismiss stage.  The *Bailey* court observed that, in light of *Vitek*, "it is

---

[10]     I note that Judge Peebles' Report-Recommendation in *Lane* was issued at the summary judgment stage.

beyond cavil that, at the time of their transfer and involuntary commitment, plaintiffs were entitled to certain pre-transfer procedural safeguards, including notice, an opportunity to be heard, and a psychiatric evaluation by court-appointed doctors, and that defendants could not have reasonably believed that their concomitant failure to provide such safeguards was lawful." *Bailey*, 636 F. Supp. 2d at 294.  The court stated that even lower-ranking officials, such as the certifying doctors, "could not have reasonably believed that the perfunctory procedures here provided . . . remotely comported with elementary fairness and due process." *Id*.

In *Bloomfield*, the defendants "seem[ed] to suggest that . . . the only statutory scheme in place was Article 9 [and] therefore they [were] immune from suit having relied on a presumptively valid statute." *Bloomfield*, 2009 WL 3335892 at * 8.  This argument, the court stated:

> overlook[s] the fact that Correction Law § 402 was also in place at the time in question, yet they opted to not follow that equally presumptively valid statute . . . Whether Defendants are entitled to qualified immunity for relying on one law over another depends, in our view, on whether the rights Plaintiff asserts he was entitled to were clearly established as of his involuntary admission. We find that they were. Indeed, as early as 1980, the Supreme Court ruled that the involuntary transfer of a prisoner to a mental hospital implicates a liberty interest protected by the Fourteenth Amendment's Due Process Clause. *Vitek v. Jones,* 445 U.S. 480 (1980) . . . New York State Corrections Law appears to satisfy the clearly established procedures set forth in *Vitek*, while Article 9 does not.  In this regard, we find that at this stage, Defendants' reliance on Article 9 as the only protections available to be misplaced.  At the very least, it is questionable at this stage whether their reliance on Article 9 as the sole avenue was reasonable.

*Bloomfield*, 2009 WL 3335892, at *8-9.

Although I am sympathetic to the argument that lower-ranking officials such as Defendants Gonzalez and Wurzberger were placed in a difficult position when they were instructed to proceed according to the Mental Hygiene Law rather than the Correction Law, I agree with the *Bailey* and *Bloomfield* decisions and conclude that, at least at this stage in the litigation, Defendants are not entitled to qualified immunity.[11]  Therefore, I recommend that the Court deny the motion to dismiss this claim against Defendants Gonzalez and Wurzberger.

### D.  Federal Claims Against Defendants Sawyer, Nihalani, and Hanmer

Plaintiff alleges that Defendants Sawyer, Hanmer, and Nihalani "knowingly and willingly entered into a conspiracy to conceal from [P]laintiff that [he] had been wrongfully and illegally involuntarily confined against [his] will, and in order to keep [him] wrongfully and illegally involuntarily confined against [his] will at CNYPC."  (Dkt. No. 1 at 11.)

"To prove a § 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to

---

[11]      I find that nothing in the Second Circuit's recent decision in *Amore v. Novarro*, ___ F.3d ___, No. 08-3150-CV, 2010 U.S. App. LEXIS 12736, 2010 WL 2490017 (2d Cir. June 22, 2010) compels a different result.  In that case, the defendant police officer arrested the plaintiff for violating a statute that had been found  unconstitutional eighteen years prior to the arrest.  It was undisputed that the statute appeared in the officer's field guide to the Penal Law with no indication that it was invalid and that the defendant police officer was unaware that the statute had been held unconstitutional.  The district court denied the police officer's motion for summary judgment.  Reversing the trial court, the Second Circuit found that the officer was entitled to qualified immunity because it was objectively reasonable for him to believe that the statute was valid.  This case is distinguishable from the situation in *Amore*.  Here, Defendants Gonzalez and Wurzberger are employees of the New York State Department of Mental Health. (Dkt. No. 1 at 3.)  I cannot conclude, at least on the basis of the record currently before the Court and applying the standard applicable to motions to dismiss, that it would be objectively reasonable for them not to be aware of the existence of Correction Law § 402, a statute that on its face applies specifically to the involuntary commitment of prisoners.

inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999) (citations omitted).

Defendants Sawyer, Hanmer, and Nihalani argue that Plaintiff has not alleged facts plausibly suggesting that they acted in concert to inflict an unconstitutional injury. (Dkt. No. 27-1 at 11-13.) Defendants are correct. Plaintiff alleges, essentially, that Defendants conspired to deprive him of his right to due process by preventing him from viewing the Certificates prepared by Defendants Wurzberger and Gonzalez. (Dkt. No. 1.) Plaintiff had no due process right to view the Certificates because he had no constitutionally-protected liberty or property interest in the Certificates. *See Lawrence v. Antonucci*, No. 04-CV-356S, 2005 U.S. Dist. LEXIS 38777, 2005 WL 643457 (W.D.N.Y. Mar. 16, 2005) (holding that plaintiff had no property interest in documents requested under the Freedom of Information Act because such documents are merely an expectation, even if awarded pursuant to court order).[12] Moreover, Defendants' conduct did nothing to "conceal" the due process violation that occurred when Plaintiff was committed pursuant to the Mental Hygiene Law because Plaintiff was already aware that he had been committed without a hearing and without the other protections required by *Vitek* and Correction Law § 402. As discussed above, the Certificates themselves set forth sufficient reasons to commit Plaintiff under the Mental Hygiene Law and would not, in and of themselves, have revealed anything of constitutional significance to Plaintiff that he did not already know. Therefore, I recommend that the

---

[12]

Defendants served a copy of this unpublished decision on Plaintiff with their moving papers. (Dkt. No. 27-5.)

Court grant Defendants' motion to dismiss the claims against Defendants Sawyer, Hanmer, and Nihalani.

### E.      State Claims

Plaintiff alleges that Defendants committed the state law torts of libel and false imprisonment. (Dkt. No. 1 at 1.)  Defendants move to dismiss these claims. (Dkt. No. 27-1 at 17-22.)

#### 1.      Supplemental Jurisdiction

Defendants argue that this Court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims because "[P]laintiff has failed to plead a valid federal claim." (Dkt. No. 27-1 at 18.)   As discussed above, Plaintiff has pleaded a valid federal claim.  Therefore, I recommend that the Court reject this argument.

#### 2.      Statute of Limitations

Defendants argue that Plaintiff's state law claims are barred by the applicable statute of limitations. (Dkt. No. 27-1 at 18-19.)  Defendants are correct.

Pursuant to New York Civil Practice Law and Rules § 215(3), actions to recover damages for libel or false imprisonment must be brought within one year.  Here, Plaintiff alleges that Defendants libeled him in 2006 and falsely imprisoned him from September 2006 to October 2007.  Plaintiff did not file this action until March 11, 2009.  (Dkt. No. 1.)  Therefore, Plaintiff's state law claims are barred by the statute of limitations and I recommend that the Court grant Defendants' motion to dismiss the claims.  In light of this recommendation, I decline to address Defendants' argument that Plaintiff has failed to state a cause of action for libel or false imprisonment.

### III.    STATUS OF DEFENDANT JOANNE WINSLOW

Defendant Joanne Winslow has not been served and has not appeared in this action. An attempt to serve her at the Monroe County District Attorney's Office was unsuccessful because she is now a Supreme Court judge.  (Dkt. No. 15.)  I recommend that the claims against her be dismissed *sua sponte* without the necessity for her appearance.  As discussed above in Section II(E)(2), any claim against her for libel is barred by the statute of limitations.  Further, the complaint does not plead facts plausibly suggesting that she was personally involved in any constitutional violation.

'[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'"  *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)).  In order to prevail on a cause of action under 42 U.S.C. § 1983 against an individual, a plaintiff must show some tangible connection between the unlawful conduct and the defendant.  *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). As discussed above, the only constitutional violation plausibly raised by the complaint is that the procedure under which Plaintiff was committed did not comply with *Vitek* or Correction Law 402.  The complaint does not plausibly suggest that Defendant Winslow played any role in the decision to proceed pursuant to the Mental Hygiene Law rather than the Correction Law or the implementation of that decision.  Therefore, I recommend that the Court *sua sponte* dismiss the claims against Defendant Winslow pursuant to 28 U.S.C. § 1915(e)(2).

### IV.    MOTION FOR APPOINTMENT OF COUNSEL

Plaintiff moves for the appointment of counsel.  (Dkt. No.  34.)

Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin*, 114 F.3d 390, 392-93 (2d Cir. 1997). Instead, a number of factors must be carefully considered by the court in ruling upon such a motion. Among these factors are:

> The indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994) (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986)). This is not to say that all, or indeed any, of these factors are controlling in a particular case. Rather, each case must be decided on its own facts. *Velasquez v. O'Keefe*, 899 F. Supp. 972, 974 (N.D.N.Y. 1995) (citing *Hodge*, 802 F.2d at 61).

To date, Plaintiff has been able to effectively litigate this action. While it is possible that there will be conflicting evidence implicating the need for cross-examination at the time of the trial, as is the case in many actions brought under 42 U.S.C. § 1983 by *pro se* litigants, "this factor alone is not determinative of a motion for appointment of counsel." *Velasquez*, 899 F. Supp. at 974. Furthermore, if this case survives any other dispositive motions filed by Defendants, it is highly probable that this Court will appoint trial counsel at the final pretrial conference. Finally, this Court is unaware of any special reasons why appointment of counsel at this time would be more likely to lead to a just determination of this litigation.

However, I note that plaintiffs in several actions similar to Plaintiff's are represented

by Ameer N. Benno, Esq. and Reza Rezvani, Esq., 233 Broadway, Suite 900, New York,

NY 10279.  Although I find that it is not appropriate to appoint counsel for Plaintiff at this

juncture, Plaintiff might wish to consider contacting Mr. Benno and Mr. Rezvani to inquire

whether they would be interested in accepting his case.

 **ACCORDINGLY**, it is

 **RECOMMENDED** that Defendants' motion to dismiss for failure to state a claim

(Dkt. No. 27) be **GRANTED IN PART AND DENIED IN PART**.  It is recommended that

the following claims be dismissed: (1) all claims against Defendants in their official

capacities; (2) any claim that Defendants Gonzalez and Wurzberger deprived Plaintiff of due

process by failing to properly comply with Mental Hygiene Law § 9.27; (3) the claims

against Defendants Sawyer, Nihalani, and Hanmer; and (4) the state claims for libel and

false imprisonment.  Defendants Gonzalez and Wurzberger should be ordered to answer

Plaintiff's claim that they deprived him of due process by proceeding under Mental Hygiene

Law § 9.27 rather than Correction Law § 402; and it is further

 **RECOMMENDED** that the Court *sua sponte* dismiss all claims against Defendant

Winslow; and it is further

 **RECOMMENDED** that Plaintiff's motion for appointment of counsel (Dkt. No. 34)

be **DENIED WITHOUT PREJUDICE**; and it is further

 **ORDERED** that the Clerk provide copies of  *Bailey v. Pataki,* No. 08 Civ. 8563,

2010 U.S. Dist. LEXIS 66720, 2010 WL 2671462 (S.D.N.Y. July 6, 2010); *Bloomfield v.*

*Wurzberger*, No. 9:08-CV-619 GLS/RFT, 2009 U.S. Dist. LEXIS 95924, 2009 WL 3335892

(N.D.N.Y. Oct. 15, 2009); *Wheeler v. Pataki*, No. 9:07-CV-0892 TJM/GHL, 2009 U.S. Dist.

LEXIS 19343, 2009 WL 674152 (N.D.N.Y. Mar. 11, 2009); *Abdul-Matiyn v. Pataki*, No.

9:06-CV-1503 DNH/DRH, 2008 U.S. Dist. LEXIS 28670, 2008 WL 974409 (N.D.N.Y.

Apr. 8, 2008) to Plaintiff in accordance with the Second Circuit's decision in *LeBron v.*

*Sanders*, 557 F.3d 76 (2d Cir. 2009).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file

written objections to the foregoing report.  Such objections shall be filed with the Clerk of

the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS**

**WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85 (2d Cir.

1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989));

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.


Dated: July 28, 2010
        Syracuse, New York

George H. Lowe
United States Magistrate Judge

31