UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JASON BALKUM,

                                  Plaintiff,        9:09-CV-0289 (NPM)

DONALD SAWYER, PETER
HANMER, NIKIHILI NIHALANI,
JOSE GONZALEZ, BEZAZEL
WURZBURGER, and JOANNE
WINSLOW,

                                  Defendants.
_____

APPEARANCES:                        OF COUNSEL:

FOR PLAINTIFF:

Jason Balkum, *pro se*
352 Hayward Avenue
Apt. 2
Rochester, New York 14609

FOR DEFENDANTS:

HON. ANDREW M. CUOMO        RICHARD LOMBARDO, ESQ.
Attorney General for the State of New   Assistant Attorney General
 York
Attorneys for Donald Sawyer, Peter
 Hanmer, Nikihili Nihalani, Jose
 Gonzalez, and Bezazel Wurzburger
The Capitol
Albany, NY 12224

Neal P. McCurn, Senior District Judge

## ***MEMORANDUM-DECISION and ORDER***

### *I. Introduction*

Presently before the court is a Report-Recommendation ("Report") from United States Magistrate Judge George H. Lowe. See Dkt. No. 35. In this Report, Magistrate Judge Lowe recommends that a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure by defendants Donald Sawyer, Peter Hanmer, Nikihili Nihalani, Jose Gonzalez ("Gonzalez"), and Bezazel Wurzberger ("Wurzberger")[1] (collectively, "Moving Defendants")[2] be denied in part and granted in part and that a motion for appointment of counsel by plaintiff, Jason Balkum ("Plaintiff") be denied without prejudice. Moving Defendants and Plaintiff, appearing *pro se*, timely filed objections, in part, to the Report. For the reasons that follow, the Report is adopted in its entirety.

### *II. Background*

For purposes of deciding the pending Rule 12(b)(6) motion to dismiss, the court will, as it must, accept as true the following allegations in Plaintiff's complaint. See Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292, 300 (2d Cir. 2003) (quoting Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123,

---

[1] In the caption and throughout the body of the complaint, Plaintiff spells this defendant's surname as "Wurzburger." However, as it appears the correct spelling is "Wurzberger," the court will use same from this point forward and directs the Clerk of the Court to correct the spelling on the docket report. See Ex. A to Decl. of Richard Lombardo, Sept. 14, 2009, Dkt. No. 28. See also Bloomfield v. Wurzberger, No. 9:08-cv-619, 2009 WL 3335892 (N.D.N.Y. Oct. 15, 2009).

[2] The sole remaining defendant, Joanne Winslow, has not been served and therefore has not appeared in this action.

2

126 (2d Cir. 2001)).

Plaintiff alleges he was involuntarily confined against his will at Central New York Psychiatric Center ("CNYPC"). In August 2006, Plaintiff was serving a prison sentence at Washington Correctional Facility. Two weeks before his prison term ended, Plaintiff was transferred to Coxsackie Correctional Facility. While at Coxsackie, defendants Gonzalez and Wurzberger, psychiatrists with the New York State Office of Mental Health ("OMH"), interviewed Plaintiff in order to determine whether he should be involuntarily confined pursuant to New York Mental Hygiene Law § 9.27. Gonzalez and Wurzberger each completed a certificate of examination recommending that Plaintiff be involuntarily confined.

Plaintiff alleges that Gonzalez and Wurzberger, in reaching their conclusions that Plaintiff should be involuntarily confined, each relied on "libelous and slanderous comments" by defendant Joanne Winslow ("Winslow"), a then assistant district attorney with the Monroe County District Attorney's Office. Compl. ¶ 10. In his certificate of examination, Gonzalez noted that Winslow sent a letter to OMH indicating that Plaintiff is a danger to the community and that Winslow fears for her own personal safety. Wurzberger noted that in addition, Winslow reported that Plaintiff was still "writing obsessive letters about this case." Compl. ¶ 8. Plaintiff alleges that in relying on Winslow's statements to recommend involuntary confinement, Gonzalez and Wurzberger entered into a conspiracy with Winslow to deprive Plaintiff of his right to due process under the United States Constitution.

In support of their motion, Moving Defendants submit the certificates of examination, which are properly considered by this court as Plaintiff refers to them

3

in his complaint. See *infra*, at 6. A review of the certificates reveals that in addition to Winslow's statements, Gonzalez considered Plaintiff's commitment offense and criminal history, psychological diagnosis, psychological test scores, lack of remorse, continued denial that he committed a crime, refusal to participate in treatment, and disciplinary record while incarcerated. See Ex. A to Decl. of Richard Lombardo, Sept. 14, 2009, Dkt. No. 28 ("Lombardo Decl."). Wurzberger considered, in addition to Winslow's statements, Plaintiff's commitment offense and criminal history, lack of remorse, refusal to participate in treatment, denial that he committed the crimes, and psychological test scores. See id.

Plaintiff also alleges that defendant Donald Sawyer ("Sawyer"), Executive Director of CNYPC conspired with defendants Peter Hanmer ("Hanmer"), a Social Worker at CNYPC and Nikihili Nihalani ("Nihalani"), a psychiatrist at CNYPC, to conceal from Plaintiff that he had been wrongfully and illegally involuntarily confined against his will, based upon their various efforts to thwart Plaintiff's attempts to receive copies of the certificates of examination.

Plaintiff purports to set forth claims against defendants pursuant to 42 U.S.C. § 1983 for violations of his right to due process under the Fourteenth Amendment to the United States Constitution as well as the New York common law tort claims of libel and unlawful imprisonment. Moving Defendants seek dismissal of the complaint against them for failure to state claims upon which relief may be granted. As is relevant here, Moving Defendants argue that (1) Plaintiff fails to state a section 1983 claim against them because the Due Process Clause does not require that a physician's assessment in his commitment evaluation be correct, (2) Plaintiff fails to establish the elements of a conspiracy

4

claim under federal civil rights law, and (3) in any event, Moving Defendants are entitled to qualified immunity. Despite being given two opportunities to oppose the motion, Plaintiff failed to do so. See Dkt. Nos. 31, 33.

In his Report, Magistrate Judge Lowe recommends Moving Defendants' motion be granted in part and denied in part, and further recommends *sua sponte* dismissal of the complaint against defendant Wilson.

Plaintiff objects to so much of the Report that recommends dismissal of conspiracy claims against all defendants, dismissal of a due process claim against defendants Gonzalez and Wurzberger based on their compliance with Mental Hygiene Law § 9.27, and *sua sponte* dismissal of all claims against defendant Winslow. For their part, Moving Defendants object to so much of the Report that recommends denial of their motion to dismiss the complaint regarding a due process violation based on a decision by defendants Gonzalez and Wurzberger to apply the procedures in Mental Hygiene Law § 9.27 rather than New York Correction Law § 402. Moving Defendants further object to so much of the Report that recommends denial of qualified immunity to defendants Gonzalez and Wurzberger on the same due process claim.

### *III.  Discussion*
#### *A.  Legal Standard*

When considering objections to an order of a magistrate judge concerning a dispositive matter, the district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). See also FED. R. CIV. P. 72(b). A district judge may accept, reject or modify the findings and recommendations of

5

the magistrate judge.  See RULE 72(b).  See also Rivera v. Barnart, 423 F.Supp.2d 271, 273 (S.D.N.Y. 2006).[3]

When deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court must accept the factual allegations in the complaint as true, drawing all inferences in favor of the plaintiff.  See supra, at 2.  The court is generally "required to look only to the allegations on the face of the complaint."  Roth v. Jennings, 489 F.3d 499, 509 (2d Cir. 2007).  However, in addition to the complaint's factual allegations, the pleading includes any written instrument or exhibit attached to a complaint or incorporated by reference.  See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-153 (2d Cir. 2002) (citing Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir. 1995)).

Plaintiffs must allege enough facts "to raise a right of relief above the speculative level."  See Bell Atl. Corp. V. Twombly, 550 U.S. 544, 555–56, 127 S. Ct. 1955, 1965 (2007).  But a plaintiff need not plead specific facts.  See Erickson v. Pardus, 551 U.S. 89, 93, 127 S. Ct. 2197, 2200 (2007).  Where certain "facts are peculiarly within the possession and control of the defendant," plaintiffs are not prevented from "pleading facts alleged upon information and belief."  See Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010) (internal quotations omitted) (quoting Boykin v. Keycorp, 521 F.3d 202, 215 (2d Cir. 2008)).  The complaint must contain sufficient factual allegations, accepted as true, to state a facially plausible claim.  See Ashcroft v. Iqbal, — U.S. —, —, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct.

---

[3] Having carefully reviewed the remainder of the Report, to which neither party objects, for clear error, this court adopts same in its entirety.  See 28 U.S.C. § 636(b)(1).

6

1955, 1974 (2007)).  However, assessing whether a complaint states a facially plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S. Ct. at 1950.

Further, the court is mindful of the well-established principle that a *pro se* litigant's papers are to be construed liberally, especially when civil rights violations are alleged.  See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 ( 2d Cir. 2008) (internal citations omitted).  Thus, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Boykin v. KeyCorp,  521 F.3d 202, 214 (2d Cir. 2008) (quoting Erickson v. Pardus, ---U.S. ----, 127 S.Ct. 2197, 2200 (2007) (per curiam)).  Accordingly, the court must interpret Plaintiff's "submissions to raise the strongest arguments that they suggest." Diaz v. United States,  517 F.3d 608, 613 (2d Cir. 2008) (internal quotation and citation omitted).  Further, "when reviewing *pro se* submissions, a district court should look at them 'with a lenient eye, allowing borderline cases to proceed.'" Phillips v. Girdich,  408 F.3d 124, 127 -128 (2d Cir. 2005) (quoting Fleming v. United States, 146 F.3d 88, 90 (2d Cir.1998) (per curiam).

### *B.  Plaintiff's Objections*

As an initial matter, it should be noted that a *de novo* review by this court of certain portions of the Report to which Plaintiff objects will necessarily be limited in part due to Plaintiff's failure to file any papers in opposition to Moving Defendants' motion to dismiss, despite being given two opportunities to do so. Pursuant to Rule 7.1(b)(3) of the Local Rules of this court, a "non-moving party's

7

failure to file or serve any papers as this Rule requires shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause is shown." N.D.N.Y. R. 7.1(b)(3).  See also Hernandez v. Nash, No. 9:00-cv-1564, 2003 WL 22143709, at *2 (N.D.N.Y. Sept. 10, 2003).[4]  Where, as here, the non-moving party fails to oppose such a motion, "the only remaining issue is whether the legal arguments advanced in the defendant's memorandum of law are *facially meritorious*."  Whitaker v. Super, No. 9:08-cv-0449, 2009 WL 5033939, at *3 (N.D.N.Y. Dec. 14, 2009) (emphasis in original) (citation omitted).   This rule applies equally to Plaintiff "because even *pro se* plaintiffs must obey the Court's procedural rules."  Id. (citing McNeil v. U.S., 508 U.S. 106, 113, 113 S.Ct. 1980 (1993); Faretta v. California, 422 U.S. 806, 834, n. 46, 95 S.Ct. 2525 (1975); Edwards v. I.N.S., 59 F.3d 5, 8 (2d Cir.1995)).

      Therefore, it is against this backdrop that Plaintiff's objections to so much of the Report that recommends dismissal of conspiracy claims against all defendants and dismissal of a due process claim against defendants Gonzalez and Wurzberger based on their compliance with Mental Hygiene Law § 9.27, will be analyzed.  Moving Defendants did not address the claims against defendant Winslow in their papers, presumably because she has not been served and therefore has not appeared in this action.  Accordingly, the court will review that portion of the Report that recommends *sua sponte* dismissal of all claims against defendant Winslow without regard to the fact that Plaintiff failed to oppose the pending motion.

---

[4] This Report and Recommendation was subsequently adopted in its entirety by the District Court.

8

### *1.  Due Process Claim*

Plaintiff argues that Magistrate Judge Lowe erred when he recommended that Plaintiff's due process claim against Wurzberger and Gonzalez be dismissed insofar as they complied with Mental Hygiene Law § 9.27.  According to Plaintiff, the fact that Wurzberger and Gonzalez relied on Winslow's false and unsubstantiated remarks about him leads to the conclusion that they failed to comply with § 9.27.  Plaintiff relies on Rodriguez v. City of New York, wherein the Court of Appeals for the Second Circuit concluded that "due process does demand that the decision to order an involuntary emergency commitment be made in accordance with a standard that promises some reasonable degree of accuracy." Rodriguez, 72 F.3d 1051, 1062 (2d Cir. 1995).

Mental Hygiene Law § 9.27 requires that an application for involuntary commitment be made by an individual with personal knowledge.  See N.Y. MENTAL HYG. L. § 9.27(a) (McKinney 2010).  In addition, the application must be accompanied by the certificates of two examining physicians, whose findings must be confirmed by a doctor at the receiving institution.  See § 9.27(b)(e).  Here, in addition to Winslow's statements, Wurzberger and Gonzalez each relied on several other factors in reaching the conclusion that Plaintiff should be involuntarily committed.  Absent Winslow's statements, Wurzberger and Gonzalez could have recommended involuntary confinement and still be in compliance with § 9.27.  Accordingly, the court adopts the recommendation of Magistrate Judge Lowe that Plaintiff's due process claim against Wurzberger and Gonzalez be dismissed insofar as the allegations in the complaint as well as the certificates of examination, viewed in a light most favorable to Plaintiff, indicate

9

that defendants Wurzberger and Gonzalez complied with § 9.27.

### *2. Conspiracy Claims*

Plaintiff alleges that in relying on Winslow's unsubstantiated and false statements in order to recommend his involuntary confinement, Gonzalez and Wurzberger entered into a conspiracy with Winslow to deprive him of his right to due process under the United States Constitution. Plaintiff also alleges that defendant Sawyer conspired with defendants Hanmer and Nihalani to conceal from Plaintiff that he had been wrongfully and illegally involuntarily confined against his will, based upon their various efforts to thwart Plaintiff's attempts to receive copies of the certificates of examination.

As previously addressed, the allegations in the complaint as well as the certificates of examination, viewed in a light most favorable to Plaintiff, show that Wurzberger and Gonzalez complied with Mental Hygiene Law § 9.27. Accordingly, Plaintiff's conspiracy claim against them must be dismissed on that basis.

As for the conspiracy claims against Sawyer, Hanmer and Nihalani, Moving Defendants argue that those claims must be dismissed because Plaintiff's confinement did not constitute a constitutional violation and because the complaint establishes a reasonable basis for defendants' denial of Plaintiff's request for copies of the certificates of examination. Moving Defendants note that it is a violation of the Mental Hygiene Law to provide a patient with a copy of his or her medical record when to do so "can reasonably be expected to cause substantial and identifiable harm to the patient or client or others." § 33.16(c)(1). While Plaintiff alleges that Sawyer and Hanmer denied his request for copies of the certificates of examination on this basis, there is no allegation that Nihalani did

10

the same. Moreover, there is no allegation explaining to whom the substantial and identifiable harm would be directed, nor are there any allegations explaining the kind of harm that is reasonably expected. Accordingly, Moving Defendants argument in this regard is not "facially meritorious." Whitaker, WL 5033939, at *3.

However, as Magistrate Judge Lowe found, Plaintiff does not have a constitutionally protected property interest in the certificates of examination. See Lawrence v. Antonucci, No. 04-CV-356S, 2005 WL 643457, at *3 (W.D.N.Y. Mar. 16, 2005). While Lawrence dealt with documents requested under the Freedom of Information Law, other cases have further acknowledged that "there is no constitutional or common law right to direct and unrestricted access to medical records." Ruhlmann v. Ulster County Dep't of Soc. Servs., 234 F.Supp.2d 140, 183 (N.D.N.Y. 2002) (citing Gotkin v. Miller, 514 F.2d 125, 128 (2d Cir.1975)). Thus, viewing the facts alleged in a light most favorable to Plaintiff, he fails to state an underlying constitutional violation in support of his conspiracy claims against Sawyer, Hanmer and Nihalani. Accordingly, these claims are dismissed.

### 3.  *Claims Against Defendant Winslow*

Finally, Plaintiff objects to so much of the Report that recommends *sua sponte* dismissal of the claims against Winslow. Plaintiff argues that Magistrate Judge Lowe relied on the wrong factual basis for Plaintiff's claims against Winslow when he recommended that the claims be dismissed. According to Plaintiff, the basis for his claim against Winslow is that she

> engaged in a conspiracy with Defendants Wurzb[e]rger and Gonzalez to wrongfully involuntarily civilly confine [Plaintiff] by knowingly and willfully manufacturing false and unsubstantiated remarks about [Plaintiff], and

11

>    then sending the letter containing those remarks to
>    Defendants Wurzb[e]rger and Gonzalez to be used
>    against [Plaintiff] during the involuntary [c]ommit[]ment
>    hearing.

Pl.'s Objections to Magistrate Judge's Report, at 4, Dkt. No. 40.

In order to state a claim of conspiracy pursuant to 42 U.S.C. § 1983, a plaintiff must sufficiently allege "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999). Moreover, "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006) (quoting Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994)).  Plaintiff's only allegations of Winslow's personal involvement in the alleged conspiracy with Wurzberger and Gonzalez are that Winslow wrote letters, upon which Wurzberger and Gonzalez relied, along with many other factors, in order to conclude that Plaintiff should be involuntarily committed.  There are no allegations that Winslow acted in concert with Wurzberger and Gonzalez "to wrongfully involuntarily civilly confine" Plaintiff beyond the conclusory statements by Plaintiff that they were involved in a conspiracy.  Moreover, as previously discussed, Wurzberger and Gonzalez complied with Mental Hygiene Law § 9.27 and therefore, no constitutional violation occurred on that basis.  Accordingly, this court adopts Magistrate Judge Lowe's recommendation and *sua sponte* dismisses all claims against defendant Winslow pursuant to 28 U.S.C. § 1915(e)(2).

### C. Moving Defendants' Objections

Moving Defendants object to so much of the Report that recommends denial of their motion to dismiss the complaint regarding a due process violation based on a decision by defendants Gonzalez and Wurzberger to apply the procedures in Mental Hygiene Law § 9.27 rather than Correction Law § 402. To be sure, such a claim is not specifically alleged in the complaint. However, in accordance with well settled principles in this Circuit, Magistrate Judge Lowe broadly construed the complaint to allege a due process claim under the stated theory. See Parisi v. United States, 529 F.3d 134, 139 (2d Cir. 2008) (citing Weixel v. Bd. of Educ., 287 F.3d 138, 145-46 (2d Cir. 2002)) (noting that the court "**must** read [a *pro se* plaintiff's] submissions broadly so as to determine whether they raise any colorable legal claims ") (emphasis added).

#### 1. Due Process Claim

The Report includes a thorough summary of the legal landscape regarding due process rights of prisoners who are involuntarily transferred to mental hospitals. See Report, at 11-15. The court adopts this summary and assumes familiarity therewith. Two cases worth mentioning here, however, are Vitek v. Jones, 445 U.S. 480, 100 S.Ct. 1254 (1980) and New York ex rel. Harkavy v. Consilvio, 7 N.Y.3d 607 (2006) (Harkavy I). In Vitek, the Supreme Court concluded that the minimum requirements of due process before a prisoner may be transferred to a mental hospital include a pre-deprivation notice and hearing. See Vitek, 445 U.S. at 494-95, 100 S.Ct. at 1264-65. Notably, Correction Law § 402 provides for a pre-deprivation hearing, while Mental Hygiene Law § 9.27 does not. Thus, the New York Court of Appeals held in Harkavy I that "in the absence of a clear legislative directive in regard to inmates nearing their release from

13

incarceration, . . . Correction Law § 402[, rather that Mental Hygiene Law § 9.27,] is the appropriate method for evaluating an inmate for postrelease involuntary commitment to a mental facility." Harkavy I, 7 N.Y.3d at 614.

Magistrate Judge Lowe, in deciding whether Plaintiff's complaint sufficiently states a claim on the basis that his due process rights were violated when Wurzberger and Gonzalez applied the procedures in Mental Hygiene Law § 9.27 rather than the more protective procedures in Correction Law § 402, considered, in addition to Vitek and Harkavy I, decisions of several other district courts in this Circuit that have answered a similar legal question in the affirmative. See Bailey v. Pataki, — F.Supp.2d —, No. 08 Civ. 8563, 2010 WL 2671462 (S.D.N.Y. July 6, 2010); Bailey v. Pataki, 636 F.Supp.2d 288 (S.D.N.Y.); Bloomfield v. Wurzberger, No. 9:08-cv-619, 2009 WL 3335892 (N.D.N.Y. Oct. 15, 2009); Lane v. Carpinello, No. 9:07-CV-0751, 2009 WL 3074344 (N.D.N.Y. Sept. 24, 2009); Wheeler v. Pataki, No. 9:07-CV-0892, 2009 WL 674152 (N.D.N.Y. Mar. 11, 2009); Abdul-Matiyn v. Pataki, No. 9:06-CV-1503, 2008 WL 974409 (N.D.N.Y. Apr. 8, 2008).

In their objections, Moving Defendants assert that the district court decisions relied on by Magistrate Judge Lowe were incorrectly decided in light of Baxstrom v. Herold, 383 U.S. 107, 86 S.Ct. 760 (1966) and Kansas v. Hendricks, 521 U.S. 346, 117 S.Ct. 2072 (1997). Baxstrom, however, merely stands for the proposition that mentally ill incarcerated persons are entitled to the same level of procedural safeguards as all other mentally ill persons. There, the court held that a prisoner "was denied equal protection of the laws by the statutory procedure under which a person may be civilly committed at the expiration of his penal sentence *without the jury review available to all other persons civilly committed* in New

14

York." Baxstrom, 383 U.S. at 110, 86 S.Ct. at 762 (emphasis added). In Hendricks, the Supreme Court simply cited Baxstrom to support their conclusion that no double jeopardy applies when civil commitment follows the end of a prison term. See Hendricks, 521 U.S. at 369-70 117 S.Ct. at 2086.

Considering the decisions of the other district courts in this Circuit, which are directly on point, as well as Vitek and Harkavy I, the court adopts Magistrate Judge Lowe's recommendation that Moving Defendants' motion to dismiss be denied insofar as the complaint states a due process claim based on the decision of Wurzberger and Gonzalez to apply the procedures in Mental Hygiene Law § 9.27 rather than the more protective procedures of Correction Law § 402.

### *2. Qualified Immunity*

Moving Defendants also object to so much of the Report that recommends denying qualified immunity to Wurzberger and Gonzalez at this stage of the litigation.

A government official such as Wurzberger or Gonzalez is entitled to qualified immunity

> (1) if the conduct attributed to him was not prohibited by federal law, or (2) where that conduct was so prohibited, if the plaintiff's right not to be subjected to such conduct by the defendant was not clearly established at the time it occurred, or (3) if the defendant's action was objectively legally reasonable in light of the legal rules that were clearly established at the time it was taken.

Manganiello v. City of New York, 612 F.3d 149, 164-165 (2d Cir. 2010) (quoting Munafo v. Metropolitan Transportation Authority, 285 F.3d 201, 210 (2d Cir.2002) (internal citation and quotation omitted). Thus, the question of whether a defendant government official's action was objectively reasonable has been

viewed as part of the inquiry into whether the constitutional right alleged to have been violated by defendant was clearly established.  See Amore v. Novarro, 610 F.3d 155, 162 (2d Cir. 2010) (citations omitted).

Here, the court has found that viewed in a light most favorable to Plaintiff, the complaint alleges a constitutional violation against Wurzberger and Gonzalez. Moving Defendants argue, however, that Wurzberger and Gonzalez relied on a presumptively valid state law when they completed the certificates of examination, noting that the certificates were completed before the Court of Appeals decided Harkavy I.  Moving Defendants also argue that Wurzberger and Gonzalez are entitled to qualified immunity at this stage of the litigation, noting that this court can and should decide the purely legal question of whether the constitutional right at issue here was clearly established, instead of requiring Moving Defendants to conduct costly discovery in order to proceed with this litigation.

To be sure, the Supreme Court has "made clear that the driving force behind creation of the qualified immunity doctrine was a desire to ensure that insubstantial claims against government officials will be resolved prior to discovery" and has stressed "the importance of resolving immunity questions at the earliest possible stage in litigation." Pearson v. Callahan, — U.S. —, 129 S.Ct. 808, 815 (2009) (internal citation and quotation omitted).  Thus, where, as here, a qualified immunity defense is asserted as part of a motion to dismiss pursuant to Rule 12(b)(6), dismissal is appropriate so long as the basis for the defense appears in the facts alleged on the face of the complaint, and the procedural standard for dismissal has been met, to wit, plaintiff has failed to set forth sufficient factual allegations, accepted as true, to state a facially plausible claim.  See McKenna v. Wright, 386 F.3d 432, 435-36 (2d Cir. 2004).  See also

16

Iqbal, — U.S. at —, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 570, 127 S.Ct. at 1974).  Nonetheless, dismissal of a complaint on qualified immunity grounds at this early stage of litigation is the exception, not the rule.  See McKenna, 386 F.3d at 435.

When deciding whether the constitutional right at issue was clearly established courts in this Circuit shall consider the following:

> (1) whether the right in question was defined with "reasonable specificity"; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful.

Dean v. Blumenthal, 577 F.3d 60, 68 (2d Cir. 2009) (citing Jermosen v. Smith, 945 F.2d 547, 550 (2d Cir.1991)).  Magistrate Judge Lowe considered the first two factors and correctly concluded that the Supreme Court's decision in Vitek, decided more than twenty five years before the events underlying this action, made clear the procedural due process rights of prisoners being transferred to a psychiatric facility.  See Vitek, 445 U.S. 480.  Accordingly, the remaining legal question to be decided is whether, under the preexisting law at the time Wurzberger and Gonzalez completed their certificates of examination, "[government officials] of reasonable competence could disagree as to the lawfulness of" applying Mental Hygiene Law § 9.27 rather than the more protective Correction Law § 402.  Manginello, 612 F.3d at 164-65 (quoting Zellner v. Summerlin, 494 F.3d 344, 367 (2d Cir. 2007)).  This court agrees with Magistrate Judge Lowe's recommendation and decides this question in the affirmative.  It is instructive that at the time Wurzberger and Gonzalez completed

17

their certificates of examination, the Supreme Court opinion in Vitek, which is still good law, made clear that a pre-deprivation hearing was part of the required procedural safeguards when a prisoner was to be transferred to a psychiatric facility.  See Vitek, 445 U.S. 480. Correction Law § 402, equally presumptively valid at the time Wurzberger and Gonzalez completed the certificates of examination, provides for a pre-deprivation hearing, while Mental Hygiene Law § 9.27 does not.  Yet, Wurzberger and Gonzalez opted not to follow § 402. Accordingly, Wurzberger and Gonzalez are not entitled to qualified immunity. See Bloomfield, 2009 WL 3335892, at * 8, 10.

## *IV.  Conclusion*

In accordance with the foregoing, the Report- Recommendation of United States Magistrate Judge George H. Lowe, see Dkt. No. 35 is adopted in full. Therefore, it is

**ORDERED** that Moving Defendants' motion to dismiss for failure to state a claim, see Dkt. No. 27, is **granted** in part and **denied** in part; and it is further

**ORDERED** that the following claims are **dismissed**: (1) all claims against Defendants in their official capacities; (2) any claim that Defendants Wurzberger and Gonzalez deprived Plaintiff of due process by failing to properly comply with Mental Hygiene Law § 9.27; (3) the claims against Defendants Sawyer, Nihalani, and Hanmer; and (4) the state claims for libel and false imprisonment; and it is further

**ORDERED** that Defendants Wurzberger and Gonzalez shall answer Plaintiff's claim that they deprived him of due process by proceeding under Mental Hygiene Law § 9.27 rather than Correction Law § 402; and it is further

**ORDERED** that all claims against Defendant Winslow are *sue sponte* **DISMISSED**; and it is further

**ORDERED** that Plaintiff's motion for appointment of counsel, see Dkt. No. 34, is denied without prejudice.

The Clerk of the Court is hereby directed to correct the caption of the docket report in this action to reflect the correct spelling of defendant Bezazel Wurzberger's surname, and is further directed to serve a copy of this Memorandum-Decision and Order on Plaintiff by regular mail.

IT IS SO ORDERED.

DATED:   October 1, 2010
         Syracuse, New York

_____
Neal P. McCurn
Senior U.S. District Judge

19